UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    ROBERT QUINN                                Case No. 17-32180-dof
    and LEA QUINN,                            Chapter 13 Proceeding
                                                     Hon. Daniel S. Opperman
              Debtors.
_____/

OPINION SUSTAINING TRUSTEE'S OBJECTION
TO CONFIRMATION OF AMENDED CHAPTER 13 PLAN

Introduction

Before the Court is the objection raised by the Chapter 13 Trustee in this case, Carl L. Bekofske, to confirmation of Debtors Robert and Lea Quinn's proposed Amended Chapter 13 Plan. Debtors' proposed plan treats their student loan debt favorably—too favorably according to the Trustee who argues this treatment constitutes unfair discrimination under 11 U.S.C. § 1322(b)(1). The Court agrees and sustains the Trustee's objection to Debtors' Amended Chapter 13 Plan.

Facts

Debtors filed their voluntary petition under Chapter 13 of the Bankruptcy Code on September 21, 2017. Unsecured creditors filed claims in the amount of $227,193.33. Of that amount, $192,936.15 is owed to the federal government for student loans incurred by Debtor Lea Quinn. Debtors filed their Amended Chapter 13 Plan on November 29, 2017. The plan proposes a sixty month term with payments of $1,200 per month. Debtors propose separately classifying their student loan debt as a Class 4 continuing claim, while the remaining unsecured creditors are classified as Class 9. Debtors' plan also states that the Class 4 creditor will receive a minimum

1

of $850.00 per month and "shall be paid all available funds prior to disbursements on any subsequent level."

The Court held a hearing regarding confirmation of the plan on January 16, 2018. The Trustee objected to the special treatment given to the student loan debt in the plan. No creditors objected to the plan. Because there was some uncertainty regarding there possibly being a co-debtor, the case was set for a status conference on February 7, 2018. On that date, the absence of a co-debtor was confirmed, but the Court required briefing regarding Debtors' separate classification of their student loan debt. Debtors filed their brief on March 2, 2018, arguing that their plan should be confirmed due in part to the unique nature of student loans. They pointed to the fact that the contractual obligation on their student loan claim is $1,894.00 per month. Under their proposed plan, they estimate that they would pay $56,800.00 on this claim.[1] However, because of the accumulating interest and penalties, at the end of the sixty month term, they would still owe $192,720.37 in student loan debt, which is $215.78 less than what they owed on the date they filed their bankruptcy petition. In contrast, if Trustee's objection is sustained, Debtors argue that they will owe at least $6,006.22 more on their student loan debt after their Chapter 13 plan is completed. The Trustee filed his brief on March 30, 2018, arguing that Debtors' proposed plan violates § 1322(b)(1) and § 1322(b)(10). The Trustee suggested several ways to amend the plan so that it would no longer be unfairly discriminatory. The first suggestion was to remove the language from the plan requiring the Class 4 creditor be paid "all available funds prior to disbursements on any subsequent level."[2] According to the Trustee's

---

[1] The Trustee estimates that the student loan creditor would be paid $68,806.00 under the plan.

[2] The Trustee noted that while the plan set forth that the student loan creditor would receive a minimum payment of $850.00 per month, due to this language, it may actually receive up to $1,112.40 per month.

calculation, this would allow the student loan creditor to receive $56,950.00 or a 29% dividend on its claim and the remaining unsecured creditors a 34% dividend. The other suggestion was to place the student loan creditor in Class 9 along with the remaining creditors. Based on the Trustee's calculations, this would allow the student loan creditor to receive approximately $58,423.91 and the remaining unsecured creditors would receive a 30.3% dividend. In their reply brief filed on April 6, 2018, Debtors disputed the Trustee's calculations because they are based on the amounts owed as of the date of the bankruptcy filing and do not take into account the interest that would continue to accumulate during the term of the plan.

After reviewing the briefs, the Court requested further briefing on specific issues of fact regarding the education Debtor Lea Quinn received as a result of her student loan debt and the employment obtained as a result of that education. Debtors filed their supplemental brief on May 25, 2018. Debtors noted that Debtor Lea Quinn had a bachelor's degree in social work and a master's degree in public administration. Since 2008, she has been a director at a non-profit organization and earns $71,000 per year. The Trustee filed his supplemental brief on June 1, 2018. A confirmation hearing is set for June 12, 2018.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

## Law and Analysis

In what has been termed a "crisis" for our country, the national student debt has tripled in the past decade to more than $1.3 trillion. *See In re Engen*, 561 B.R. 523, 544-45 (Bankr. D. Kan. 2016) (citations omitted). There is no statute of limitations for student loans, and thus the

government can pursue debtors "'to the grave.'" *Id.* at 546 (citation omitted). Moreover, student loans are generally excepted from discharge. Under 11 U.S.C. § 523(a)(8), educational loans, scholarships and stipends are nondischargeable, "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." If a debtor does not affirmatively secure an undue hardship determination, the discharge order will not include a student loan debt. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (citation omitted). Congress enacted this exception to discharge "'to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans.'" *Barron v. Tex. Guaranteed Student Loan Corp. (In re Barron)*, 264 B.R. 833, 838-39 (Bankr. E.D. Tex. 2001) (quoting *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998)). Moreover,

> because student loans are generally unsecured and recent graduates often have few or no assets, these debtors have an incentive to try to discharge their educational loans in bankruptcy. If successful, they can then enjoy the higher earning power the loans have made possible without the financial burden that repayment entails. Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

*Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86-87 (2d Cir. 2000) (citations omitted).

This treatment of student loan debt by the Code presents a quandary for Chapter 13 debtors. Not only will the student loan debt survive the debtor's discharge, but the amount owed in student loans may be more after completion of the plan than it was on the date of the bankruptcy filing. Thus, more and more debtors are proposing that their student loan creditor be paid a greater amount than the other unsecured creditors in their Chapter 13 plan. Many courts

4

allow debtors to do so,[3] reasoning that such treatment is consistent with the Code for a number of reasons:

> (1) a debtor will not be afforded a fresh start in bankruptcy if the debtor is defaulting on student loan payments over the term of a 3-5 year plan, considering that on-going monthly plan payments are likely to be less than the amount owed on the student loan debt, interest is accruing, and the debts survive the debtor's discharge; (2) strong public policy supports the repayment of education loans; (3) Congress prefers Chapter 13 over Chapter 7, and debtors in Chapter 7 fare better with making post-bankruptcy payment on student loans debts because a Chapter 7 debtor will not have been in forced default of student loan debt obligations for 3-5 years; and (4) other unsecured creditors in Chapter 13 are not harmed by the preferential treatment for student loan debt because unsecured creditors must receive a return in Chapter 13 that is equivalent to what they would receive in Chapter 7 pursuant to 11 U.S.C. § 1325(a)(4).

*In re Mason*, 456 B.R. 245, 248 (Bankr. N.D. W. Va. 2011) (citing Seth J. Gerson, Note: *Separate Classification of Student Loans in Chapter 13*, 73 Wash. U.L.Q. 269, 290-92 (1995)). In other words, not only does the favorable treatment of student loans help debtors, but it is also consistent with the Congressional intent to protect the fiscal health of our country's student loan programs. *Engen*, 561 B.R. at 541-42. The Court finds these reasons persuasive and agrees that student loan debt may be given favorable treatment in a Chapter 13 plan.

Under § 1322(b)(1), a Chapter 13 plan may

> designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]

While a minority of courts have held that a long term nondischargeable student loan claim under § 1322(b)(5) is not subject to the unfair discrimination requirement of § 1322(b)(1), *see, e.g.*, *In*

---

[3] Some courts draw the distinction between remaining current on student loan payments during the term of the plan and accelerating those payments. *See, e.g.*, *In re Webb*, 370 B.R. 418, 425 (Bankr. N.D. Ga. 2007) (distinguishing cases where the debtors proposed paying substantially greater dividends throughout the course of the plan from that case where debtor proposed making payments in the same amount provided by the original contract).

*re Williams*, 253 B.R. 220, 227 (Bankr. W.D. Tenn. 2000) (inclusion of unsecured creditors in (b)(5) indicates that it is a type of discrimination that is expressly contemplated and sanctioned by the Code), a majority of courts agree that a debtor may use § 1322(b)(5) to maintain long-term student loan payments only as long as the plan complies with the unfair discrimination prohibition set forth in § 1322(b)(1), *see, e.g.*, *In re Brown*, 500 B.R. 255, 265 (Bankr. S.D. Ga. 2013) (separate student loan classification must undergo unfair discrimination analysis). The courts who follow the majority approach, however, do not agree on what the appropriate framework is for analyzing the issue of unfair discrimination.

The Trustee urges this Court to rely on the guidelines set forth in the case of *Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229 (B.A.P. 1st Cir. 2001).[4] In *Bentley*, the Bankruptcy Appellate Panel for the First Circuit looked at "the principles and structure of Chapter 13 itself" "for the baseline against which to evaluate discriminatory provisions for fairness." *Id.* at 240. The court identified four guiding provisions for doing so. First, there is the general expectation that, absent an express grant of priority, unsecured creditors will share equally in any dividend. As a result, "fairness in Chapter 13 requires equality of distribution among nonpriority unsecured creditors, and the burden of justification is on those who propose plans to the contrary." *Id.* Second, the Code does not grant student loans priority status. *Id.* Thus, there is nothing in the Code that "warrants or justifies treating the student loans more favorably than the others." *Id.* at 241. Third, mandatory versus optional contribution expresses the Chapter 13 requirement that a debtor devote all of his or her projected disposable income to a plan if the plan does not pay the full amount of allowed unsecured claims. *Id.* The expectation is that unsecured creditors share

---

[4] Debtors urge this Court to adopt a test set forth in *In re Bird*, No. 94-01012, 1994 Bankr. LEXIS 2384 (Bankr. D. Idaho Dec. 23, 1994). However, this Court finds that case to be outdated and declines to do so.

pro rata from distributions funded with the debtor's mandatory contributions. *Id.* Fourth, a fresh start for honest debtors is one of the Code's fundamental purposes. *Id.* This is tempered against the notion that "Chapter 13 does not contemplate that a debtor will necessarily emerge from Chapter 13 entirely free of student loan obligations." *Id.* at 242. Applying this test, the Court held that the plan at issue, which proposed paying the student loan creditor in full while paying other unsecured creditors only a 3.6% dividend, discriminated unfairly. *Id.* at 243.

While this Court has cited to the *Bentley* Court's analysis favorably in the past, the Court will now consider other approaches that have been undertaken by courts in more recent years. Some courts continue to utilize a number of factor tests other than the test set forth in *Bentley* to determine whether a proposed plan is unfairly discriminatory. One widely applied test considers: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Jordahl v. Burrell (In re Jordahl)*, 539 B.R. 567, 573 (B.A.P. 8th Cir. 2015) (quoting *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991)) (finding that the separate classification of the student loan debt was unfairly discriminatory under the four-part test). After considering this test and others, another court developed its own "streamlined test" which asks: "(1) Is there a good faith, rational basis for the separate classification; (2) Is the separate classification necessary to the debtor's rehabilitation under Chapter 13; and (3) Is there a meaningful payment to the discriminated class." *In re Belton*, No. 16-03040-JW, 2016 Bankr. LEXIS 4179, at *19-24 (Bankr. D.S.C. October 13, 2016) (finding that the separate classification of the student loan debt was not unfairly discriminatory under the three-part test).

7

17-32180-dof    Doc 66    Filed 06/05/18    Entered 06/05/18 15:52:48    Page 7 of 10

Other courts have rejected the various tests and have instead opted for a more flexible approach. As articulated by one court, "[t]he various tests seem too inflexible to properly reflect the discretion that this Court has with respect to confirmation of a Chapter 13 plan that contains a separately classified creditor." *Engen*, 561 B.R. at 538. The court noted that the tests can function as a starting point for the court's analysis, but should not be a barrier to confirmation of a Chapter 13 plan. *Id.* After considering the application of the *Bentley* guidelines to the facts of that case, the court found that the plan proposing to pay the student loan debt in full without post-petition interest prior to payment of other unsecured claims did not discriminate unfairly. *Id.* at 551. Another court similarly reasoned that "because 'unfairness' is ultimately a discretionary determination, subject to individual judgment that is informed by the nature and purpose of the Bankruptcy Code, articulated multifactor tests applicable to all cases are not helpful and are incongruous with the nature of the required judicial process." *Mason*, 456 B.R. at 251. The court found that while it was permissible to treat the student loan creditors more favorably than the other unsecured creditors, the debtor was required to articulate a reason as to why she proposed making a 72% distribution to her student loan creditors and only an 8% distribution to other unsecured creditors. *Id.* at 252. As another court aptly observed,"[a]lthough courts employ a variety of different tests and approaches in considering what constitutes unfair discrimination, nearly all tests involve considering the totality of the circumstances in each case." *In re Kindle*, 580 B.R. 443, 451 (Bankr. D.S.C. 2017). Applying a totality of circumstances approach, the court found that the debtor continuing to make her student loan payments while paying the remaining unsecured creditors a 33% dividend was not unfairly discriminatory. *Id.* at 452.

The Court agrees that a totality of the circumstances inquiry is appropriate when making the determination of whether the favorable treatment of a student loan debt in a Chapter 13 plan is unfairly discriminatory. Here, the student loan claim is in the amount of $192,936.15. Under Debtors' proposed plan, the student loan creditor would receive a minimum of $850.00, but possibly as much as $1,112.40, per month. Despite this significant payment, Debtor Lea Quinn would continue to be in default of her student loans because her contractual obligation is $1,894.00 per month. This is contrary to one of the reasons that supports the favorable treatment of student loan debt, and that is to not force a debtor into default during the term of the plan. Many courts that have confirmed a plan giving student loan debt favorable treatment consider this an important factor. *See, e.g.*, *Webb*, 370 B.R. at 425 (stating that '[i]f debtors are not allowed to continue their direct payments to the Student Loan Creditors, they may face the consequences of default upon completion of their Chapter 13 plan payments, and such a result conflicts with the purpose of a fresh start"). Moreover, here, the remaining unsecured creditors would receive nothing, which is similar to what they would likely receive in a Chapter 7 bankruptcy. *Cf. id.* at 426 (noting that a payment of a 1% dividend in the proposed plan in that case is more than unsecured creditors would likely receive in a Chapter 7 bankruptcy).

Debtors argue that if their plan is confirmed, they will owe $215.78 less on their student loan debt at the end of the plan's sixty month term, but if the Trustee's objection is sustained, they will owe $6,006.22 more on their claim. The Court finds that this slight benefit to Debtors does not offset the discrimination against the remaining unsecured creditors. Moreover, the Court questions the efficacy of a Chapter 13 plan where Debtors will be in default of their student loan debt during the term of the plan and, yet, the remaining unsecured creditors will receive nothing. The Court notes that applying the streamlined test set forth by the court in

*Belton* further supports its conclusion because under Debtors' proposed plan, there is no "meaningful payment to the discriminated class." *See Belton*, 2016 Bankr. LEXIS 4179, at *20. In sum, while the Court finds that student loan debt may be given favorable treatment in a Chapter 13 plan, considering the totality of the circumstances here, the Court finds that the plan proposed by Debtors is unfairly discriminatory under § 1322(b)(1).[5] The Court therefore sustains the Trustee's objection to confirmation of the plan.

## Conclusion

For the forgoing reasons, the Court sustains the Trustee's objection to confirmation of Debtors' Amended Chapter 13 Plan. The Trustee is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on June 05, 2018**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge

---

[5] Because the Court sustains the Trustee's objection based on a violation of § 1322(b)(1), there is no need to discuss the Trustee's alternative argument that Debtors' special treatment of their student loan debt also violates §1322(b)(10), which prohibits payment of post-petition interest on an unsecured, nondischargeable debt unless the debtor pays all other allowed claims in full.